May it please the Court, this action reflects what happens when in the tens of thousands of entries that Customs and Commerce handle, one of those two agencies makes a mistake and the importer fails to pursue their obligations to correct that mistake. The trial court shoehorned a one-off fix to try to fix that mistake and in doing so it upended years of judicial precedence and clear statutory authority. What's critical is they ignored a black and white statute and they ignored direct precedence of this Court on point. How can you make a decision about something that doesn't exist by operation of law? You can make a decision, the decision may be wrong and that's what CEMEX, this Court's precedence tells us, that it reflects a decision, it may be an incorrect one and there's a critical difference between those two because decisions must be protested and in this case we... Well in Juice Farms there was a posting but that posting was in response to direct communication from Commerce, correct? Yes. And about an actual liquidation, correct? Juice Farms was an actual liquidation, yes. In CEMEX there also was communication from Commerce, correct? Correct. And there was communication here, yes, there was a communication which turned out to be invalid, it meant nothing in CEMEX. And here we have no communication. We have an email from Commerce to Customs saying liquidate all entries except for Ergonesis which we don't know, Commerce may, Customs may have interpreted that to mean Ergonesis, they looked through their files, found no Ergonesis and assumed that that was noticed and liquidated, I mean posted deemed liquidations. Was that email in the record below or did you add that to the record up here? Absolutely on the record below. I can tell you the, it is Joint Appendix 167. Did you dispute the erroneousness of the deemed liquidation before the Court? It didn't come up. That's what's troubling about the trial court's decision is we were arguing jurisdiction, it was never briefed, we never had a chance, it was completely irrelevant. So the trial court made findings on something that wasn't before it that we never had a chance to argue. And our brief before this court clearly illustrates why the decision by Customs may or may not have been erroneous and at least we know there's reasons why they may have affirmatively made that decision. Does it make a difference under CEMEX whether or not the deemed liquidation was erroneous? No. No, it only makes a difference as to whether Customs made a decision. That's what CEMEX tells us. If Customs made a decision, then you have to protest it. Whether the decision was correct or not, that's what the protest decides. Is the decision, the publication of the decision, is that reflected on appendix page JA-170? You are correct. Is that the notice? That is the decision. That reflects, that's the Customs decision that a deemed liquidation occurred. And the decision is the handwritten notation on that sheet? Absolutely. Yes, which is not unusual. That's a typical decision by the agency when they post it. That's a typical posting, but there's a difference between saying that that in and of itself constitutes the entirety of the decision. That is the posting reflecting a decision. I'm not sure if I'm answering your question correctly, but this is what a typical notice of a deemed liquidation looks like. This happens every day. This is nothing unusual. Every day, but normally after a deemed liquidation actually exists. We hope, yes. So this was all that you're saying they should have been on notice to look for? That's actually not true. At the same time Customs did this, they sent notices to Alden Leeds saying exactly what this, there's been a deemed liquidation. Below, Alden Leeds claimed they weren't legible. They said they weren't legible when they got them from their broker. It was not explored whether they were legible when they went from Customs to the broker. And frankly, these are courtesy notices. This is the law that tells you they had to monitor this. We know this from CEMEX, from everything else, that they had to monitor this to notice this. But even here, they did worse than that. They chose to ignore notices they got because they said they couldn't read them. What was the notice? Just a copy of this? It was, no, it's a printout. And I'm sorry, I realized subsequently that it didn't make it into the administrative record, but it certainly appeared with the judge. And what made it into the administrative record is if you look at page 197 of the administrative record, you can see where the plaintiff, Alden Leeds, discusses them. It says they weren't legible, we chose to ignore them. It had notice to itself, at least something was going on, and it chose to ignore that. What incentive is there to search for postings when, by operation of law, there is supposed to be a stay? There's supposed to be a suspension. Juice Farms and CEMEX deal with that. You still have a responsibility. And the statute tells us that you have to, because 1514 tells you that any decision by customs as to a liquidation, including a deemed liquidation, is final and conclusive unless protested. Congress has said, you need to monitor. And this court in both Juice Farms and CEMEX has agreed and said, yes, even though it's supposed to be suspended, you can't sit on your rights. You have to still keep looking. How do you justify the distinction between a court injunction, which if there's a court injunction in place, you say Congress doesn't have authority to act, but if Congress hasn't gotten authority to act under operation of law as dictated by Congress, how can there be a distinction between those two? The distinction was made at a trial court level, but let's spy that that's the law. That's perfectly fine. Court injunctions are a different branch of government telling the executive agency. You have issues there where the agency, disregarding a branch of government, would have constitutional problems. In addition, with regard to suspensions, parties know their goods are still subject to the administrative procedures. They are knowing that. They know they need to monitor the federal register. As Judge Rustani said in LG Electronics, when it comes to a court case, the party can rest assured. At this point, it's now within the parameters of the court. A party doesn't have to monitor the administrative record or, I'm sorry, the federal register anymore because the court has its hands on it. There's a real critical difference, and it's not unreasonable to require a party to monitor the federal register when it's at the administrative level, and this court has held that for years. This dates a long time. This is not the first case. It's really just our decision in CEMEX that says any posting constitutes a decision that is what you're hanging your hat on, right? We're hanging our hat on CEMEX, which grows from the statute, which grows from Juice Farms. Well, the statute just refers to a deemed liquidation, and as the lower court pointed out, a deemed liquidation requires certain steps by operation of law before it can exist. That's not true with respect, Your Honor. The statute says any decisions by customs as to a deemed liquidation. That is a lot broader than the statute just saying deemed liquidation. It's telling you any decision customs makes as to a deemed liquidation, and that means posting of deemed liquidations is clearly a decision. So the day after a suspension, when everybody knows that by administrative suspension nothing is supposed to happen, and no liquidation can occur, and that none of the steps that occur that create a deemed liquidation, if customs just posts, that's the end of the inquiry. Exactly, and Juice Farms told us that, and there really would be no difference between why a company would have to monitor the federal register for notices of deemed liquidation, but notice of liquidation that, I mean, it can ignore notices of deemed liquidation, but has to monitor it for notices of liquidation. That would create a two-level process that would make no sense, that they're insured against deemed liquidations, but liquidations, they have to monitor for those, even though the entry's suspended. It would create a very unusual system that would make no sense. Is there anything else I can answer? Because I'm almost, I will hold the rest of my time for my rebuttal. Thank you very much. Thank you very much. Mr. Fiorenzo? Yes. Thank you, Your Honor. It's good morning. Good morning. I would like to pick up, just to follow up on a couple of questions that have been raised. First, Your Honor asked a question concerning whether there was a concession at the trial level that the absence of, well, there was a suspension of liquidation, in fact, whether that was an illegal act. In fact, there was such a concession. In Judge Eaton's decision, he states, and I quote, while defendant concedes that the suspension, in fact, prevented a deemed liquidation from taking place, it states at the point of his no aviator relief in this lawsuit, that concession was made on the record, during oral argument. And in fact, that concession had to be made. The fact of the matter is, when Judge Eaton made a determination that there was no protestable event, he did so based upon sound legal authority. He didn't cite CEMEX, though. How do you just happen to not mention that? Well, CEMEX wasn't the principal argument that had been raised, frankly, at the trial level below by the government. They argued just that. But isn't CEMEX the closest case? Yeah. You're right. It is. And let me address CEMEX, because CEMEX is consistent with, in no way, alters the result here. In CEMEX, on March 23, 1998, Commerce told Customs that the suspension of liquidation was removed. When Customs made a determination in April of 2001 to have a deemed liquidation, they did so at that time without there being, with all the statutory criteria being met. There had been a notice from Commerce that the suspension had been lifted. They had published a notice indicating that the six months had elapsed. So unlike the current case, in CEMEX, when Customs acted, Customs had every right to act consistent with the determination that had been made by Commerce. So here, we have a situation where, I'm sorry, I turned this off, I apologize, it's off. You'll never forget that one. I apologize. So here, in our case, there is no question that at the time the decision was made by Customs to create a deemed liquidation in April, that none of the statutory criteria were met. The suspension of liquidation continued to remain in place. And as Judge Eaton found, under these unique facts, which do not exist in Juice Farms, which was an actual liquidation case, did not exist in CEMEX, because in CEMEX, at the time the decision was made by Customs to deem the liquidation, they had every right statutorily to do so. But no, in CEMEX, there was a problem with the deemed liquidation, and that had to do with the public notice aspect. So they didn't have all of the criteria necessary for a deemed liquidation as of that point in time. They had most of them, and you could see why they might make a mistake in interpreting it, but if we're talking about operation of law, there was a problem, wasn't there? Respectfully, Judge O'Malley, at the time, if we focus on the time when Customs made their decision, when they posted the notice of the deemed liquidation, that determination concerning the inadequacy of the notice from Commerce on March 23, 1998, did not occur until years later when there was subsequent litigation. When Customs acted at that moment in time, all of the statutory criteria existed. They had a right to act based upon the facts that existed on the ground at that time. Not so in this case. The suspension of liquidation had been lifted. They duly gave notice. They deemed the liquidation, and even though years later, following litigation, there was a subsequent determination that Commerce notice was premature, because they hadn't waited for the Supreme Court appeal period to run, it didn't affect the fact that at the time that Customs acted, there was a protestable event. So- In Semex, the court held that the email did not provide proper notice, so that all of the necessary predicates to a deemed liquidation were not present. Judge Lynn, that determination that the notice was improper had to do with the notice that Commerce gave to Customs to liquidate and to remove the suspension of liquidation. That ruling, as I said, didn't occur until far down the line. I would respectfully submit the critical time period to evaluate the actions of Customs and whether there's a protestable event is when Customs act. At the time that Customs act, at the times Customs determined a deemed liquidation in Semex, at that time, all of the statutory criteria existed for them to act. Commerce had lifted the suspension. There was no longer any impediment to going forward to deem the liquidation, and it was only later, in subsequent litigation, when there was a challenge that was made, that it was determined that the notice from Commerce to Customs was improper. But at that time, when Customs acted, they had full statutory authority under 19 U.S. C.E. 1504 to act. The suspension had been removed. Customs had received notice of same, and there had not been a liquidation for more than six months. So the critical distinction I respectfully submit to you in Semex is that when Customs acted, they did so precisely in accordance with the statute. Even though years later, subsequently in litigation, it was determined that the Commerce notice was invalid, at that time, there was a protestable event under 1514A, which could have been pursued. That's the critical distinction. But wait, let me read to you from Semex. It says, in that case, it said, ad hoc contends that Customs posting of the bulletin notice in April 2001 cannot constitute a deemed liquidation, which occurs solely by operation of law. We need not reach this question, because we agree with the Court of International Trade that Customs' decision to acknowledge that liquidation, deemed or otherwise, that that liquidation had occurred, falls within the purview of section 1514A, and is thus final and conclusive. In other words, they said, we don't even have to reach this question of whether the deemed liquidation was valid or occurred by operation of law. I mean, rightly or wrongly, that's what they said. This court in Semex reserved on that question, I agree. They didn't address it. But what they did say, they addressed the second argument that had been made, which was that there has not been made a, quote, decision, close quote, under the statute, which is a protestable event. In that case, they looked at the factual record, and they determined that, and they talked about this distinction between whether this is merely a ministerial act, whether, in fact, there was an affirmative action taken by Customs in Semex to liquidate. And they went through the factual record, and here's what they said. Quote, in March, this is on page 1314, did Customs make a decision regarding liquidation within the meaning of 19 U.S.C. 1514A? They go through the record. They talk about how the Customs headquarters reviewed this complicated factual record, how Customs made a determination, ultimately, quote, Customs made an affirmative determination to acknowledge and implement the deemed liquidation of the Nogales entries pursuant to Commerce's March 23, 1998 email. They go on to say on the next page that here, Customs made a decision to liquidate, quote, following an inquiry into the legal posture of the second review entries. So here, in Semex, a determination was made, one of the critical elements is, did Customs make a decision? If Customs made no decision, then it doesn't trigger 1514A. Under this record, they made a decision. Under the record we have before Judge Eaton, undisputed on the record in this case, there was no decision. As Judge Eaton said, this was a simple mistake. No volitional act on the part of Customs was engaged in here. There was no decision, Judge Eaton so found, as a result of which it doesn't trigger 1514A as it did in Semex. In Semex, they had a complicated factual construct. They evaluated it. They undertook a legal analysis of whether or not there was an ability to proceed forward, and they decided to liquidate based upon the March 23, 1998, notice from Customs. What's the impact of footnote 14 in Semex? The footnote 14 simply confirms, as they said earlier above in the language I quoted, that here, there was a decision that was made by Customs, which in Semex this court found was a protestable event. In our case, Judge Eaton found, to the contrary, there was no decision. Customs made no determinations. As he found, based on the undisputed record, this was simply a mistake. No one determined that they were going to defy the Directive of Commerce. Some data processing person entered something erroneously into the computer, and it spit out the- Maybe I'm missing something, so this might be a very basic question. But under 1514A, it specifically talks about clerical errors, mistakes of fact, or other inadvertence. So doesn't that fit right within 1514A? Well, it talks about clerical errors, mistake, and connection with a liquidation. And again, that gets back to the question of whether there was a liquidation here or not. But as to the question of whether there was an error or not, this court in Semex, in evaluating that statutory scheme, talked about whether a decision under that statute was made or not as a precondition for triggering 1514A. And this court in Semex said, we must distinguish between mere ministerial acts and actual decisions are made, because it's only decisions of customs that are protestable. That's the ruling of this court in Semex. That's why they went through that extensive analysis and talked about the distinction between ministerial versus actual decision making. And they went through the record and said, here, customs, in fact, made an actual conscious decision. In our case, it is undisputed that there was no decision. Judge Eaton found that this was nothing more than someone having made some computer entry, which spit something out inconsistent with the direction from Congress. Footnote 4 of his decision lays out the facts. In fact, during oral argument, he invited the government to submit to him and supplement the record to evaluate that question. And he ultimately concluded that there was no colorable basis for any conclusion, but that this was simply a clerical error that someone engaged in, which was not a protestable event. So for both of those reasons, both the fact that this action was an illegal act, and just like in LG Electronics, where the court found that in injunction, you could not act in violation of injunction, an act of Congress is no different. They are a co-equal branch of government. To the extent that you have a statutory scheme that prohibits, much like an injunction order of this court, prohibits a deemed liquidation from occurring unless certain facts and conditions exist, it cannot occur. It's a nullity. And to the extent that there was this error in this data entry error, it did not result in any protestable event as properly as Smith found. Do you think there is an intellectually honest way to distinguish between the administrative suspension and a court-ordered suspension? Because in LG, the case you rely upon, there was a court-ordered suspension, correct? Yes. There was a court-ordered suspension in LG Electronics. I don't think there's a principal distinction between a co-equal branch of government, a court order from a judicial branch, in effect, an order from the legislative branch stating that you cannot have a deemed liquidation and we prohibit it unless these conditions are satisfied. I don't believe there's a principal distinction between those two. And if the principle is that an injunction precludes you from going forward and engaging in a deemed liquidation, it should be no different with an act of Congress. So in my view, there's no principal distinction between the two. And I think that, standing alone, and I think Judge Eaton agreed below that to the extent that these acts were engaged in, in violation of the statutory mandate, which is, in effect, to protect importers, not to hurt importers, that statutory scheme should be given the same weight as an order, an injunction, or to the court. So in my view, most respectfully, Judge Eaton got it right. I think that the result here was the correct result. CEMEX is easily harmonized with that decision, given the fact that CEMEX involved a determination at that time, by customs, with the suspension of liquidation having been lifted at that time. And only later on was there a subsequent determination by the court that the Commerce Notice was invalid. But that created a protestable event at that time. And that's the distinction here. And I think you can easily harmonize CEMEX on that basis. And I'd like to reserve my remaining minute and a half or so, if there's any brief rebuttal. Unless you have a question. You don't get any rebuttal. OK. You are the appellee. OK. If there's any other questions that the panel have, I would be happy to address those. Thank you very much. Thank you very much. Ms. Williams? Thank you. You do get rebuttal. I'm glad. Your Honor, I would like to address the points raised by Alden Leeds. The first thing is CEMEX is not distinguishable. Alden's arguing, in hindsight, maybe the act of posting was illegal. But at the time, somehow it was legal. And therefore, it's different. First of all, you can't have a system where, in hindsight, we decide whether customs or commerce acted correctly. It's got to be one system that's judged at the time that it occurs. You can't have subsequently deciding in the past. Otherwise, you have an important position of not knowing whether they're in a CEMEX case or they're in one of our cases. In addition, in this case, it's not so clear the facts are all that different than in CEMEX. Because in CEMEX, you had a posted notice that was premature. In other words, the suspension may or may not have been lifted. And the notice may have been published before when the suspension still occurred. In our case, commerce sent in the notice to customs. In it, it said, the suspension's lifted for everybody other than Argonesis. As in CEMEX, it's possible that that notice lifted the suspension to Argonesis entries, the ones at issue. That that typo had a substantive meaning. If plaintiff was unhappy with it, they need to test that through the proper channels. They didn't do it here. Is there any impact of the trial court's finding, which purported to be a finding of fact that there was no decision here and this was purely a ministerial act? That's what I was going to get to next. That was never tested. There's not one iota of evidence about this computer processing entry error, which is coming from Alden Leeds. The judge never said it. There was no evidence of it. This issue was irrelevant to the jurisdictional case or was never tested. Well, the judge was pretty specific with this finding, that it was just a clerical error and, in fact, sort of berated the government somewhat for making the argument. He absolutely did that. And what he did is completely baseless because he made an assumption that it's a mistake. And we're going to put aside for the issue that a mistake can still be a decision. That doesn't mean simply because Customs makes a mistake that it's not a protestable decision under 1514. A mistake may still be protestable. So we'll put that aside because, clearly, even a simple mistake, you're supposed to protest. But the facts show we don't know why Custom made this error. And an oral argument, counsel repeatedly told the judge this. If you go through the transcript, it is repeated. We don't know. It might have been an error. It might have been a deliberate act, an intentional act, because they might have found that the spelling was different or the fact that these entry summaries had the wrong anti-dumping duty order might have led Customs to make the affirmative decision that, yes, these things were deemed liquidated. Could I just turn your attention, just before your time runs out, to Judge O'Malley's point in discussion with your friend on the other side, which is, leaving CEMEX aside for a moment, and if it controls, then this panel has no authority to overturn it. But leaving that aside, the principal distinction between the LG Electronics. Well, LG, I'm sorry, Your Honor, but LG dealt with some entries that were suspended administratively and some that were subject to a judicial injunction. It dealt with both kinds. And interestingly, the part of LG Electronics, which everybody relies on, deals with an administrative suspension. The court in that case said, because there was no decision, those entries deemed liquidated. I mean, those entries, the notice of deemed liquidated didn't count because there was no decision. It didn't. You're thinking of a case deal. That one purely dealt with Customs liquidating entries in disregard of a court order. LG had both. It had court order, and it had administrative suspensions. So I think the critical thing of LG is it supports our point that you can correctly liquidate something in the face of an administrative suspension if Customs makes a decision. And the facts here are absolutely crystal clear. Customs made a decision. A person wrote it on the bulletin notice. That is clearly a decision. It's not a Customs spitting out some computer thing. So if the court did make some kind of factual finding, it was on an issue that was never litigated, upon which it had no actual facts on this computer error business. And it's in complete disregard of actually all of the evidence in the case. Any other questions? Because I've kind of exhausted my time. Thank you very much. Thank you, Ms. Williams, and thank you, Mr. Fiorenzo. The case is submitted.